HONORABLE THERESA L. FRICKE
Noted for:  Friday, November 8, 2019
(without Oral Argument)

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

AMERICAN PACIFIC MORTGAGE
CORPORATION, a California corporation,
d/b/a CRANE FINANCIAL GROUP

                                Plaintiff,

        v.

FINANCE OF AMERICA MORTGAGE
LLC; GENEVA FINANCIAL, LLC;
DEBORAH MARIE MERCADO; JAMIE
JANET JENNINGS-KAY; PAUL
MATTHEW ARMSTRONG; JANE/JOHN
DOES 1-10, and DOE BUSINESS/
CORPORATE ENTITIES 1-10,

                                Defendants.

NO. 2:19-cv-00749-RSM-TLF

**DEFENDANT GENEVA FINANCIAL,
LLC'S MOTION TO VACATE
CLERK'S ENTRY OF DEFAULT**

## I.     RELIEF REQUESTED

Pursuant to Civil Rule 55(c), Geneva Financial, LLC ("Geneva") respectfully moves the

Court to enter an Order vacating the Clerk's Entry of Default against Geneva, dated August 7,

2019.  Plaintiff obtained an order of default against Geneva on its complaint alleging

misappropriation of trade secrets, breach of contract, and violation of the Computer Fraud and

Abuse Act and Defend Trade Secrets Act without obtaining a judgment on the merits of the

case.  As discussed below, there is good cause to vacate the Order of Default.

DEFENDANT GENEVA FINANCIAL, LLC'S MOTION TO
VACATE CLERK'S ENTRY OF DEFAULT - 1
[Case No. 2:19-cv-00749-RSM-TLF]

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

## II.   BACKGROUND

Geneva, headquartered in Arizona, offers mortgage banking to customers through branches in 43 states, with 11 branches now operating in Washington State.

Plaintiff American Pacific Mortgage Corporation ("APM"), also a mortgage banking company, filed a complaint alleging that Plaintiff's former employees, individual Defendants Deborah M. Mercado, Janet J. Jennings-Kay and Paul M. Armstrong, conspired to misappropriate Plaintiff's confidential client information in June 2017, and then, as employees of Defendant Finance of America Mortgage LLC ("FOAM") and its division, Absolute Mortgage, used Plaintiff's client information and subscription service to close mortgage loans through FOAM.  The three individual Defendants subsequently left FOAM and were hired by Geneva as of January 30, 2018, opening a new Geneva office in Marysville, Washington.  The new branch office was not successful, and closed some nine months later, in November 2018, when all three individual Defendants abruptly resigned.  Plaintiff claims that Geneva "knowingly benefited" from the allegedly misappropriated information and fraudulently obtained data without alleging any facts to support those conclusory assertions.  See Complaint, ¶¶ 40, 52, and 60.

Plaintiff filed the instant action in June 2019.  As a result of an oversight that will be explained in more detail below, Geneva did not respond to the Summons and Complaint. Accordingly, Plaintiff obtained an Order of Default on August 7, 2019.

## III.   LEGAL AUTHORITY

FRCP 55(c) permits a court "to set aside an entry of default for good cause."  The same test applies to motions seeking relief from an entry of default as for those seeking to vacate a default judgment under Rule 60(b), but "the test is more liberally applied in the Rule 55(c) context.  The Ninth Circuit explained that this is so because in the Rule 55 context, the court need not consider any interest in the finality of the judgment." *Lacey Marketplace Associates II LLC v. United Farmers of Alberta Co-Operative Ltd.*, 2013 WL 12071674, at *4 (W.D.

DEFENDANT GENEVA FINANCIAL, LLC'S MOTION TO
VACATE CLERK'S ENTRY OF DEFAULT - 2
[Case No. 2:19-cv-00749-RSM-TLF]

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

1    Wash. July 5, 2013) (citations omitted).  "The 'rules for determining when a default should be

2    set aside are solicitous towards movants, especially those whose actions leading to the default

3    were taken without the benefit of legal representation.'"  *Securian Life Ins. Co. v. Reddeck*,

4    2018 WL 6505369, at *2 (W.D. Wash. Dec. 11, 2018) (quoting *Yubran S. Mesle*, 615 F.3d at

5    1089.  See also *G. Vincent Ltd. v. Dux Area Inc.*, 2010 WL 11526894, at *2 (W.D. Wash. July

6    29, 2010) ("Because of the strong preference for adjudicating cases on their merits, the court

7    will set aside a default in the ordinary case.")  Any doubt should be resolved in favor of setting

8    aside the default in order to decide a case on its merits.  *Hudson v. Agnew*, 2010 WL 996412, at

9    *1 (W.D. Wash. Mar. 15, 2010) (citing *Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941, 945–

10   46 (9th Cir. 1986)).

11         Under the applicable test – to be liberally applied as discussed above – the Court has

12   good cause to vacate the order of default against Geneva.  To determine if a party seeking to set

13   aside a default has shown good cause, the court considers three factors: (1) whether the party

14   seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether

15   that party has a meritorious defense to the relevant claims; and (3) whether setting aside the

16   default judgment would prejudice any other party.  *G Vincent Ltd. v. Dux Area Inc.*, 2010 WL

17   11526894, at *2 (W.D. Wash. July 29, 2010) (citing *TCI Grp. Life Ins. Plan v. Knoebber*, 244

18   F.3d 691, 695-96 (9th Cir. 2001), as amended on denial of reh'g and reh'g en banc (May 9,

19   2001)).

20   **A.    Geneva did not engage in culpable conduct**

21         Examining the first factor, courts in this circuit have held a defendant's conduct to be

22   culpable "where there is no explanation of the default inconsistent with a devious, deliberate,

23   willful, or bad faith failure to respond."  *TCI Group*, 244 F3d at 698.  In other words, to treat a

24   failure to answer as culpable, the party "must have acted with bad faith, such as an intention to

25   take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise

26   manipulate the legal process."  *Yubran S. Mesle*, 615 F.3d at 1092 (quoting *TCI Group*, 244

DEFENDANT GENEVA FINANCIAL, LLC'S MOTION TO
VACATE CLERK'S ENTRY OF DEFAULT - 3
[Case No. 2:19-cv-00749-RSM-TLF]

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

1   F.3d at 697).  See also, *G. Vincent Ltd.*, 2010 WL 11526894, at *2.  Even negligence or simple

2   delay are not evidence of such conduct: "[A] defendant acts culpably, for example, if it

3   intentionally allows the entry of default for strategic advantage or to manipulate a judicial

4   proceeding." *TCI Group*, 244 F.3d at 698–99.  Regardless of the sophistication of parties,

5   courts are still lenient when the party has not engaged in devious or bad faith conduct that gives

6   rise to "culpable conduct." *Lacey Marketplace Associates II LLC,* 2013 WL 12071674, at *3)

7   (whether a party is sophisticated in legal matters is not determinative for meeting the

8   culpability standard).  This Court has found that a neglectful failure to answer is not intentional

9   and is therefore not necessarily culpable or inexcusable.  *Hudson v. Agnew*, 2010 WL 996412,

10   at *2 (such conduct does not demonstrate an intention to take advantage of the opposing party,

11   interfere with judicial decision-making, or otherwise manipulate the legal process).

12       There is no culpable conduct here that would support denying a Motion to Vacate.

13   Geneva's failure to respond to the Summons and Complaint was a result of unfortunate

14   oversight and was not intentional.  Geneva was first made aware of Plaintiff's claims that

15   Ms. Mercado, Ms. Kay and Mr. Armstrong had conspired to take proprietary information from

16   Plaintiff in March 2018, when Plaintiff's counsel sent a demand letter to FOAM President/CEO

17   Bruno Pasceri and Geneva President Aaron VanTrojen.  Declaration of Telle VanTrojen

18   ("VanTrojen Decl."), ¶10.  That demand letter attached a draft complaint, making allegations

19   and claims much the same as the Complaint filed in the instant action.  It also attached a list of

20   65 loans that the three employees had closed since leaving APM – all of which Plaintiff

21   claimed were closed with clients that the three employees had taken from Plaintiff's proprietary

22   lists.  *Id*.  Of those 65 loans, 63 loans had been closed while the employees worked for FOAM.

23   Only two loans, marked with asterisks on the list, were closed while the employees worked for

24   Geneva.  *Id*.  In the demand letter, Plaintiff threatened to file a lawsuit if Geneva failed to

25   respond by March 23, 2018. *Id*.

26

DEFENDANT GENEVA FINANCIAL, LLC'S MOTION TO
VACATE CLERK'S ENTRY OF DEFAULT - 4
[Case No. 2:19-cv-00749-RSM-TLF]

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

1    Geneva immediately investigated Plaintiff's claim and found it to be meritless.  Telle

2    VanTrojen, Geneva's Chief Operating Officer, and Tina Rose, the company's Chief

3    Compliance Officer, spearheaded the investigation in coordination with outside counsel.

4    VanTrojen Decl., ¶11.  In the course of the investigation Ms. Mercado and Mr. Armstrong

5    offered detailed explanations of how they had cultivated the clients and prospects on their lists

6    themselves, rather than taking the fruits of Plaintiff's labor.  *Id.*  Further, Ms. Mercado and

7    Mr. Armstrong specifically explained to Geneva's satisfaction how they had originated the two

8    loans that had actually closed through their own initiative, independent of any claimed prior

9    contact by Plaintiff.  *Id.*  Ms. VanTrojen told the three employees they were not to close any

10   further loans with the 65 clients on Plaintiff's list unless they could confirm to her satisfaction

11   that they had originated the clients.  VanTrojen Decl., ¶12.  After the investigation, Geneva's

12   Arizona counsel responded to Plaintiff's counsel through a letter dated June 26, 2018.

13   VanTrojen Decl., ¶13.  Plaintiff's threatened deadline to file its draft Complaint came and went

14   with no filing, and Geneva believed it had convinced Plaintiff that Geneva had no culpability

15   for any alleged actions of its employees.  *Id.*  In early November, the three individual

16   defendants abruptly resigned after little more than eight months of service, leaving Geneva with

17   an expensive and empty Marysville office.  VanTrojen Decl., ¶14.

18   Fourteen months later, on May 17, 2019, the threatened lawsuit was finally filed in this

19   court.  The Summons and Complaint were apparently served on Business Filings Incorporated,

20   Geneva's registered agent in Washington State, on May 30, 2019.  Geneva's registered agent

21   provides Geneva with paper copies of served documents if they are filed in Geneva's home

22   state of Arizona; otherwise, Geneva only receives email notice of service.  At the time that this

23   lawsuit was filed, those email notices came only to one person, Scott Mertens, Geneva's

24   Human Resources and Licensing Manager.  VanTrojen Decl., ¶14 and Declaration of Scott

25   Mertens ("Mertens Decl."), ¶5.  Mr. Mertens has not been involved in litigation before the

26   present lawsuit, apart from occasional garnishments of Geneva employees.  Mertens Decl., ¶5.

DEFENDANT GENEVA FINANCIAL, LLC'S MOTION TO
VACATE CLERK'S ENTRY OF DEFAULT - 5
[Case No. 2:19-cv-00749-RSM-TLF]

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

1    At the time the lawsuit was served, Geneva's human resources staff were facing a rush

2    of work: eight employees resigned in the last three days of May alone, five background checks

3    for new hires were entered, and the company was gearing up to hire 16 employees in June.

4    Mertens Decl., ¶6.  At the same time, the company was in the middle of a three-month project

5    to shift to a new payroll system effective July 1, which required significant time and attention

6    from Human Resources.  *Id*.  So when Mr. Mertens received an email from Geneva's registered

7    agent on May 30 with notice of service of the instant action on Geneva, he was distracted and

8    did not take the time to read it carefully.  Mertens Decl., ¶7.  He skimmed the notice, and read

9    the transmittal cover sheet to say that American Pacific Mortgage Corporation had filed a

10   complaint against Finance of America Mortgage.  He failed to read the attached 13-page

11   complaint, which would have informed him that Geneva was an additional defendant.  *Id*.

12   Mr. Mertens was unaware that APM had raised similar allegations in 2018 (he did not

13   participate in the investigation), and did not notify either Geneva's CEO, Aaron VanTrojen or

14   COO Telle VanTrojen about the notice.  Mertens Decl., ¶8.  He filed the notice in

15   Ms. Mercado's personnel file.  (The three employees had been gone from Geneva for half a

16   year at that point.)  *Id*.

17   This was an unfortunate oversight, and Mr. Mertens and Geneva immediately admitted

18   the mistake when they discovered that they had not properly responded to Plaintiff's Complaint.

19   Notably, Geneva was unrepresented in this action until August 30, 2019, by which point the

20   default had already been entered.  Declaration of Michael Brunet ("Brunet Decl."), ¶2.  Although

21   Geneva recognizes the import of the oversight, and has revised internal procedures to ensure that

22   it does not happen again, the action that led to the default does not rise to the level of "culpable

23   conduct" necessary to deny the instant motion.  The Human Resources manager who received

24   notice of service simply failed to understand its legal import or to notify the appropriate

25   executives.  There has been no effort to manipulate the judicial proceeding or allow the entry of

26   default for strategic advantage; Geneva is not culpable under the standards used by this Court.

DEFENDANT GENEVA FINANCIAL, LLC'S MOTION TO
VACATE CLERK'S ENTRY OF DEFAULT - 6
[Case No. 2:19-cv-00749-RSM-TLF]

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

**B.**     **Geneva has a meritorious defense against Plaintiff's claims.**

Under the second factor to be considered in determining whether to vacate an order of default, a defense is "meritorious" for purposes of setting aside a default as long as trying the defense on its merits "would not be a wholly empty exercise" or "might allow the party to prevail." *TCI Group*, 244 F.3d at 700; *G. Vincent Ltd.*, 2010 WL 11526894, at *2.

Taking the facts pleaded in the Complaint as true – for these purposes only – Plaintiff alleges that three individuals took confidential customer information as they left their employment at APM between two and five years ago (on dates between August 25, 2014 and June 13, 2017). Complaint, ¶¶30-32. All three individual Defendants worked for FOAM after leaving Plaintiff, before coming to work for Geneva in early 2018. Complaint, ¶10.

Geneva has a robust defense to the claims, such that trying this case on the merits would not be a "wholly empty exercise." There are no facts pleaded that would support imposing liability on Geneva for the alleged conduct of its employees' two jobs earlier. Plaintiff alleges no facts supporting the bald assertion in the Complaint that Geneva "knowingly" benefitted from the allegedly inappropriate conduct of its former employees. Complaint, ¶40. Geneva, in fact, promptly investigated Plaintiff's claims when it first learned of them in early 2018, and found them entirely unfounded. VanTrojen Decl., ¶¶11-13. Out of an abundance of caution, the company asked the employees in question not to close loans with individuals on the allegedly misappropriated list unless they could demonstrate to Geneva that they had legitimately originated those clients themselves. VanTrojen Decl., ¶12. The employees did so with respect to the two loans with individuals from the list that had closed on behalf of Geneva during the employees' brief tenure with the company. VanTrojen Decl., ¶11.

**C.**     **Setting Aside the Default Would Not Prejudice Plaintiff.**

Finally, in order to be prejudicial, setting aside an order of default must hinder a party's ability to pursue its claim, thereby causing tangible harm to the party pursuing default. *Lacey Marketplace Associates II LLC*, 2013 WL 12071674, at *5. Examples of such harm include

DEFENDANT GENEVA FINANCIAL, LLC'S MOTION TO
VACATE CLERK'S ENTRY OF DEFAULT - 7
[Case No. 2:19-cv-00749-RSM-TLF]

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

loss of evidence, increased difficulties of discovery, or other harm to the party's legal rights. *Id.* Such harm does not include remediable issues, such as inconvenience, delay, or "the mere fact that a plaintiff is forced to prove the merits of its claim." *G. Vincent Ltd.*, 2010 WL 11526894, at *3 (finding that defendant's five-month delay in obtaining new counsel, despite court's requirement that it do so by a certain date, and that the defendant missed key deadlines on the scheduling order as a result, was not prejudicial to support default). See also *TCI Group*, 244 F.3d at 701 ("It should be obvious why merely being forced to litigate on the merits cannot be considered prejudicial for purposes of lifting a default judgment.").

Vacating the default here would not be prejudicial to Plaintiff's ability to pursue its claim. There has been no loss of evidence or harm to Plaintiff's legal rights. In an ultimately unsuccessful attempt to avoid a contested motion, Geneva offered to resolve the only possible issue for Plaintiff by paying the fees that Plaintiff incurred in moving for the entry of default if Plaintiff stipulated to vacating the order of default. Brunet Decl., ¶3.

As a rationale for not agreeing to stipulate to vacate the order of default, Plaintiff has communicated a concern about being prejudiced by a delay in discovery as a result of the default. Brunet Decl., ¶7. Given that trial is more than 14 months away and that Plaintiff has not initiated any discovery to date against any party, the only potential delay relates to Geneva's Initial Disclosures, which have not yet been filed given Geneva's position as a party in default. Brunet Decl., ¶6. The parties not in default filed their Initial Disclosures on October 2 and October 9. Brunet Decl., ¶4. In the Joint Status Report and Discovery Plan, Geneva committed to file its initial disclosures within one week after the Order of Default is vacated. Brunet Decl., ¶5. It is willing to accelerate this date to file them while this motion is pending, should the Court make such an order. Even if they are filed after this motion is decided, Plaintiff and the other parties will have the disclosures a year before trial. Such minor delays and inconvenience do not constitute prejudice to justify denying Geneva a right to

DEFENDANT GENEVA FINANCIAL, LLC'S MOTION TO
VACATE CLERK'S ENTRY OF DEFAULT - 8
[Case No. 2:19-cv-00749-RSM-TLF]

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

1    defend itself on the merits, particularly given Plaintiff's own 14-month delay between sending

2    Geneva a draft complaint and filing the instant cause of action this year.

3                              **IV.    CONCLUSION**

4          In sum, under any reasonable reading of precedent in the Ninth Circuit and Western

5    District of Washington, there is good cause to set aside the order of default:  Geneva did not

6    engage in any culpable conduct, the company has a meritorious defense to Plaintiff's claims,

7    and there is no prejudice to Plaintiff from vacating the default.

8          DATED this  _24th_  day of October 2019.

9                                              FOSTER GARVEY PC

10                                        By  *s/Michael Brunet*

11                                            Michael S. Brunet, WSBA #35764
                                            1111 Third Avenue, Suite 3000
12                                           Seattle, WA  98101
                                            (206) 816-1480, tel / (206) 447-9700, fax
13                                           Mike.brunet@foster.com, email
                                            *Attorneys for Defendant Geneva Financial, LLC*

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT GENEVA FINANCIAL, LLC'S MOTION TO
VACATE CLERK'S ENTRY OF DEFAULT - 9
[Case No. 2:19-cv-00749-RSM-TLF]

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

**CERTIFICATE OF SERVICE**

I, Christy Reynolds, hereby certify that on October 24, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

DATED at Seattle, Washington, this ___24th___ day of October, 2019.

_s/ Christy Reynolds_____
Christy A. Reynolds, Legal Assistant
Foster Garvey
1111 Third Avenue, #3000
Seattle, WA  98101
(206) 447-4400
christy.reynolds@foster.com

DEFENDANT GENEVA FINANCIAL, LLC'S MOTION TO
VACATE CLERK'S ENTRY OF DEFAULT - 10
[Case No. 2:19-cv-00749-RSM-TLF]

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON  98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700