1

2

3

4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5

6 | AMERICAN PACIFIC MORTGAGE
CORPORATION,

7

Plaintiff,

8          v.

9 | FINANCE OF AMERICA MORTGAGE LLC,
et al.,

10

Defendants.

11

Case No. C19-749 RSM-TLF

REPORT AND
RECOMMENDATION RE:
DEFENDANT GENEVA'S MOTION
TO VACATE ENTRY OF DEFAULT

Noting Date: December 3, 2019

12          This matter has been referred to Magistrate Judge Theresa L. Fricke pursuant to 28

13 U.S.C. § 636(b)(1) and Local Rule MJR 3 and 4. In this civil action brought under 28 U.S.C. §

14 1331, defendant Geneva Financial, LLC. ("Geneva") has filed a motion to vacate the default

15 entered against it, arguing excusable neglect in defendant's failure to timely answer plaintiff's

16 complaint. Dkt. 34. The Court recommends that the motion to vacate the entry of default be

17 **granted**. This recommendation shall be set for consideration on **December 3, 2019**.

18          **Background**

19          On May 17, 2019, plaintiff American Pacific Mortgage Corporation filed this lawsuit

20 alleging claims under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, against multiple

21 defendants, including Geneva. Dkt. 1. Plaintiff properly served the summons and complaint on

22 all parties, including Geneva, by May 30, 2019 (Dkt. 12). Among all the defendants, Geneva was

23 the only one that failed to timely respond.

24

25 REPORT AND RECOMMENDATION RE: DEFENDANT
GENEVA'S MOTION TO VACATE ENTRY OF DEFAULT
- 1

1    Plaintiff sought and received an entry of default against Geneva on August 7, 2019. Dkt.

2    24; Dkt. 26. Counsel for Geneva filed notice of appearance on August 30, 2019 (Dkt. 29),

3    subsequently participating in the parties' preparation of the Joint Status Report filed October 9,

4    2019 (Dkt. 31). Now Geneva moves to vacate the clerk's entry of default, arguing that Geneva

5    should be allowed to litigate the contested claims.

6    **Legal Standard**

7    Default judgment is ordinarily disfavored. *Newgen, LLC, v. Safe Cig, LLC,* 840 F.3d 606,

8    616 (9th Cir. 2016). The Court may set aside an entry of default for good cause. Fed. R. Civ. P.

9    55(c). "The court's discretion is especially broad where, as here, it is entry of default that is

10    being set aside, rather than a default judgment." *O'Connor v. State of Nev.*, 27 F.3d 357, 364 (9th

11    Cir. 1994).

12    Three factors are evaluated to determine whether good cause exists: (1) whether the party

13    seeking to set aside the entry of default engaged in culpable conduct that led to the default; (2)

14    whether there is any meritorious defense to plaintiff's claims; or (3) whether setting aside the

15    entry of default will prejudice the plaintiff. *United States. v. Signed Personal Check No. 730 of*

16    *Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010); *see also Franchise Holding LLC v.*

17    *Huntington Rests. Group, Inc.*, 375 F.3d 922, 925-26 (9th Cir. 2004). The moving party bears the

18    burden of showing that any of these factors favor setting aside the default. *Franchise Holding*

19    *LLC v. Huntington Rests. Group, Inc.,* at 926.

20    The factors are disjunctive: "a finding that any one of these factors is true is sufficient

21    reason for the district court to refuse to set aside the entry of default." *Mesle*, 615 F.3d at 1091.

22    Yet the district court has discretion to set aside a default even if the defendant acted culpably,

23    where the defendant has a meritorious defense and any prejudice could potentially be cured.

24

25    REPORT AND RECOMMENDATION RE: DEFENDANT
GENEVA'S MOTION TO VACATE ENTRY OF DEFAULT
- 2

1    *Brandt v. American Bankers Ins. Co. of Florida,* 653 F.3d 1108, 1112 (9ᵗʰ Cir. 2011).  And,

2    "'judgment by default is a drastic step appropriate only in extreme circumstances; a case should,

3    whenever possible, be decided on the merits.'" *Mesle,* at 1091 (quoting *Falk v. Allen*, 739 F.2d

4    461, 463 (9th Cir. 1984)).

5    **Discussion**

6    On assessing the relevant three factors, the Court finds no extreme circumstances

7    warranting the drastic step of judgment by default.

8    *A.  Culpable Conduct*

9    A defendant's default is culpable when the defendant intentionally failed to answer the

10   complaint – with an intent to take advantage, interfere with judicial decision-making, or

11   manipulate the legal process; in other words, the defendant's failure to appear or respond is

12   "devious, deliberate, willful, or [in] bad faith." *TCI Grp. Life Ins. Plan v. Knoebber,* 244 F.3d

13   691, 697 (9ᵗʰ Cir. 2001), *overruled on other grounds by Egelhoff v. Egelhoff ex rel. Breiner,* 532

14   U.S. 141 (2001); *see also, Markel Ins. Co. v. Dahn Yoga & Health Centers, Inc.,* No. C09-1221

15   RSM, 2010 WL 1980307 at *3 - *6 (W.D. Wash. 2010).  Although the summons was properly

16   served on Geneva's registered agent, Geneva contends that its sole officer in contact with the

17   service agent did not understand its significance. Dkt. 35, VanTrojen Decl., ¶14l; Dkt. 36,

18   Mertens Decl., ¶5. Scott Mertens, Geneva's Human Resources and Licensing Manager, received

19   email notice of the complaint from Geneva's registered agent on May 30, but he was distracted

20   and failed to read past the notice. Dkt. 36, Mertens Decl., ¶7. Not having read the entire

21   complaint, Mr. Mertens did not understand that Geneva was a defendant in the action. *Id.*

22   Plaintiff had informed Geneva's CEO Aaron VanTrojen and COO Telle VanTrojen of its

23   intent to litigate these claims in 2018, but Mr. Mertens was unaware of this. *Id.* Geneva contends

24

25   REPORT AND RECOMMENDATION RE: DEFENDANT
     GENEVA'S MOTION TO VACATE ENTRY OF DEFAULT
     - 3

1    that Mr. Mertens simply failed to understand the legal import of the summons, and so failed to

2    notify the appropriate executive officers. Mertens Decl., ¶8.

3      At the hearing, Geneva clarified that at the time of service, Geneva was unrepresented by

4    counsel. *See* Oral Argument at Hearing, Dkt. 45. The fact of pending litigation was finally

5    discovered by Geneva's executive officers during a routine litigation check in August, after

6    default had already been entered. *Id*. Upon realizing that Geneva was a party to this action,

7    Geneva retained counsel and appeared in the litigation. *See* Dkt. 29.

8      "[A] defendant's conduct is culpable if he has received actual or constructive notice of

9    the filing of the action and intentionally failed to answer." *Mesle*, 615 F.3d at 1091 (internal

10   citation omitted). "When considering a legally sophisticated party's culpability in a default, an

11   understanding of the consequences of its actions may be assumed, and, with it, intentionality."

12   *Id*. The Ninth Circuit has held that the president of a company who received notice of a lawsuit

13   when it was served could no later claim ignorance of the need to respond due to the party's

14   sophistication. *See Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc*., 840 F.2d

15   685, 690 (9th Cir. 1988). Plaintiff argues that Geneva and its officers are legally sophisticated by

16   way of their business and should have understood the import of the lawsuit. However, the

17   presumption of intentionality for a legally sophisticated party is limited to individuals who are

18   lawyers or represented by lawyers at the time of the default. *See Mesle*, 615 F.3d at 1093.

19   Geneva was not represented until after the default was entered, so the presumption of

20   intentionality does not apply. Although, as Geneva acknowledges, the company erred in their

21   response to service, there is no evidence that they intentionally ignored the obligation to respond

22   to the complaint or that the failure to do so was in bad faith.

23

24

25   REPORT AND RECOMMENDATION RE: DEFENDANT
GENEVA'S MOTION TO VACATE ENTRY OF DEFAULT
- 4

1    *B. Meritorious Defense*

2    Geneva argues that it has a meritorious defense to the claims alleged by plaintiff. "All

3    that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that,

4    if true, would constitute a defense." *United States v. Aguilar*, 782 F.3d 1101, 1107 (9th Cir.

5    2015).

6    Plaintiff alleges that Geneva knowingly benefited from customer lists misappropriated

7    from plaintiff. Dkt. 1, at 9-11. This underpins plaintiff's claims of misappropriation of trade

8    secrets under Wash. Rev. Code § 19.108 *et seq.* and 18 U.S.C. § 1831 *et seq.*, and plaintiff's

9    claim that Geneva violated the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C.S. § 1030.

10    All these claims require a knowing state of mind to trigger liability. The relevant statutes on

11    misappropriation of trade secrets require that the defendant "at the time of disclosure or use,

12    *knew or had reason to know* that the knowledge of the trade secret was--(I) derived from or

13    through a person who had used improper means to acquire the trade secret."  18 U.S.C. §

14    1839(5) (emphasis added); *see* RCW 9.108.010(2) (nearly identical text). Under the CFAA, a

15    cause of action exists where the defendant "*knowingly* and with intent to defraud … exceeds

16    authorized access [to a protected computer]" and as a result "furthers the intended fraud and

17    obtains anything of value." 18 U.S.C. § 1030(a)(4) (emphasis added).

18    Geneva alleges it promptly investigated plaintiff's claims when plaintiff first threatened

19    litigation in early 2018. Geneva states that it conducted an internal investigation and found it had

20    received no benefit or thing of value due to the allegedly misappropriated customer list procured

21    by co-defendants Armstrong, Mercado, and Kay. Dkt. 35, VanTrojen Decl. at 3, ¶¶11-13.

22    Geneva submits that it directed the employees in question not to close loans with individuals on

23    the list, unless they could demonstrate to Geneva that they had legitimately originated those

24

25    REPORT AND RECOMMENDATION RE: DEFENDANT
GENEVA'S MOTION TO VACATE ENTRY OF DEFAULT
- 5

clients themselves. Dkt. 35, VanTrojen Decl. at 3, ¶12. The employees did so with respect to the two loans with individuals from the list that had closed on behalf of Geneva. Dkt. 35, VanTrojen Decl., ¶11.

Plaintiff argues that these allegations are simply a general denial and unsubstantiated by evidence. *See* Dkt. 1; Dkt. 38, at 4-5; Dkt. 45.

At this stage in the litigation, Geneva's burden is merely to allege facts that, if true, could constitute a valid defense to plaintiff's claims. *Aguilar*, 782 F.3d at 1107. Geneva has offered facts indicating that any use of or benefit from the misappropriated information was done without knowledge on Geneva's part. Geneva also asserts facts that, if true, would show that after gaining knowledge of the alleged impropriety, Geneva took steps to stop any potential use of such information. As asserted by Geneva, the alleged facts would constitute a prima facie defense to plaintiff's claims.

### C.  Prejudice to Plaintiff

Regarding the third factor, Geneva argues that plaintiff will not be prejudiced by setting aside the default. "For a delay to be prejudicial, it must result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusions." *Yan*, 78 F. Supp. 3d at 1005. Plaintiff argues that the delay of Geneva's initial disclosures has already and continues to prejudice the litigation. *See* Dkt. 45. Despite Geneva's delay in responding to the complaint, submissions from both parties indicate that since appearing, Geneva has engaged with plaintiff to resolve both the current motion and the underlying case, albeit to differing levels of satisfaction. *See* Declaration of Michael Brunet, Dkt. 37; Response to Motion to Vacate, Dkt. 38, at 5.

REPORT AND RECOMMENDATION RE: DEFENDANT
GENEVA'S MOTION TO VACATE ENTRY OF DEFAULT
- 6

Geneva's initial disclosures being delayed will be readily resolved by removal of default and the commencement of Geneva's litigation of their case. In the JSR, Geneva stated that it would file its initial disclosures within one week of the entry of default being vacated. See Brunet Decl., ¶5. Being required to defend a lawsuit on the merits is not prejudice to plaintiff in this context. *Yan*, 78 F. Supp. 3d at 1005. The contemplated delay here is slight, and the close of discovery is reasonably far off from this time to complete the discovery process. *See* Scheduling Order, Dkt. 32. There is no indication that plaintiff is at risk of losing evidence or experiencing additional difficulties with evidence.

**Conclusion**

Each of the three factors discussed above weigh against allowing the default to stand and in favor of permitting Geneva to litigate their claims. Accordingly, the Court recommends that defendant Geneva's motion to vacate the entry of default should be **granted**. The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Federal Rule of Civil Procedure (FRCP) 72(b); *see also* FRC P 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is directed set this matter for consideration on **December 3, 2019**, as noted in the caption.

Dated this 19th day of November, 2019.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION RE: DEFENDANT
GENEVA'S MOTION TO VACATE ENTRY OF DEFAULT
- 7